FILED
COURT OF APPEALS
DIVISION II

2013 OCT 29 AM 9: 46

STATE OF WASHINGTON

BY_____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CATHY JOHNSTON-FORBES, | No. 43078-9-II |
| Appellant, | |
| v. | |
| DAWN MATSUNAGA, | PUBLISHED OPINION |
| Respondent. | |

HUNT, J. — Cathy Johnston-Forbes appeals the jury's special verdict[1] finding that Dawn Matsunaga's negligence had not proximately caused Johnston-Forbes' injuries in a car accident. Johnston-Forbes argues that the trial court committed reversible error in denying her motion in limine to exclude defense expert Allan Tencer's testimony about the forces involved in this accident. Holding that the trial court did not abuse its discretion in allowing Tencer's limited testimony, we affirm.

## FACTS

### I. CAR ACCIDENT

In August 2006, Dawn Matsunaga's vehicle struck at low speed the rear end of the stopped vehicle in which Cathy Johnston-Forbes was a passenger. Johnston-Forbes exited her

---

[1] Johnston-Forbes assigns error to only the trial court's denial of her pretrial motion to exclude Allan Tencer's expert testimony. At the end of her opening and reply briefs, however, she asks us to "remand to the trial court for a new trial," Br. of Appellant at 43, and to "reverse the trial court's judgment." Reply Br. of Appellant at 25. *See also* notice of appeal from the "judgment." Clerk's Papers (CP) at 65.

vehicle, told Matsunaga that "everybody was fine," and walked 100 yards to a field while her husband waited with the car for police to arrive. 4 Verbatim Report of Proceedings (VRP) at 490. Johnston-Forbes did not experience any bruising from the impact; nor did she believe that she was injured. That evening, however, she experienced a headache and stiffness in her neck, for which she did not seek medical treatment.

Several weeks later, Johnston-Forbes visited the hospital complaining about lower back pain. During the following year she received periodic physical therapy treatments. A year after the collision she complained to her doctor that she was experiencing neck pain. Approximately four years after the accident, a December 2010 MRI (magnetic resonance imaging) revealed that Johnston-Forbes had a herniated disc in her lower neck.

## II. PROCEDURE

In the meantime, in May 2009, Johnston-Forbes sued Matsunaga for general and special damages arising from Matsunaga's alleged negligence in the August 2006 car accident. Matsunaga admitted that she had struck Johnston-Forbes' vehicle but denied that this collision had caused Johnston-Forbes' injuries.

Johnston-Forbes moved in limine to exclude the vehicle damage photographs[2] and the testimony of Allan Tencer, Matsunaga's expert witness. She argued that Tencer should not be allowed to testify, based on his lack of qualifications as a licensed engineer and the lack of a foundation for his testimony because (1) he had viewed only photographs of Matsunaga's

---

[2]Johnston-Forbes argued that the vehicle damage photographs were "incomplete, taken too remote in time and [would] tend to confuse and mislead the jury and [were] unfairly prejudicial." CP at 41. Admission of these photographs, however, is not before us in this appeal.

2

vehicle and had not physically examined it; (2) he had neither viewed photographs of nor examined Johnston-Forbes' vehicle; and (3) he failed to account for Johnston-Forbes' body position at the time of impact and how it had affected her injuries. Johnston-Forbes further argued that Tencer's testimony and the photographs would be "speculative," would "mislead and confuse the jury," and would "unfairly prejudice [her]." Clerk's Papers (CP) at 9.

Matsunaga responded:

> Dr. Tencer, who has studied accidents like this many, many times, published a couple hundred papers, done a couple of hundred tests on biomechanics, is able to look at a photograph. What you'll hear from him is that he can tell upper limits. He can say without body damage, without deformation, without physical damage to the bumper grille, because he knows what's behind these bumpers, he knows how these cars are constructed, he takes them apart, he tests them, he tests volunteers, he writes about them, he's a published author—and as I said, he's got a couple hundred in different journals—owns patents in this area in terms of car design.
> He'll testify that there are upper limits to what can happen in terms of exchange of forces, and he can credit [Johnston-Forbes'] case by saying the most that could have happened to [her] in this case in terms of force and the potential for injury is the upper limit, which is established by the absence of damage from these photographs.

1 VRP at 10-11. Matsunaga further clarified that (1) Tencer's testimony would discuss solely biomechanics, which focuses on "the forces exchanged and the *capacity* for injury"; (2) he would not testify about whether there actually *was* any injury to Johnston-Forbes; and (3) he would "talk about the forces and the limits" involved in the collision and compare them to "activities of daily living." 1 VRP at 12 (emphasis added).

The trial court denied Johnston-Forbes' motions to exclude Tencer's testimony and to exclude the photographs of Matsunaga's vehicle, which showed no visible damage. But the trial court limited Tencer's testimony by (1) excluding a repair bill from Johnston-Forbes' rental car

because it was "misleading" (implying minimal damage), and (2) instructing Matsunaga to "tailor" Tencer's testimony so as not to refer to this repair bill. 1 VRP at 19, 28. Matsunaga also agreed to limit the number of photographs of her vehicle that she would present at trial.

The case proceeded to trial. Tencer testified generally about the forces acting on the two vehicles and Johnston-Forbes' body during the collision; consistent with the trial court's limiting order, he did not discuss any injury that Johnston-Forbes might have sustained. Johnston-Forbes' extensive cross-examination of Tencer drew out the following facts: (1) Tencer is neither a medical doctor nor a licensed engineer; (2) he did not examine Johnston-Forbes' vehicle or any photographs of it; (3) a basketball hoop had fallen on Matsunaga's vehicle between the time of the accident and when she took the photographs of it; and (4) Johnston-Forbes' body position at the time of the accident could have resulted in greater stress on her body than Tencer's collision force analysis predicted. Johnston-Forbes also asked Tencer, "[Y]ou're not testifying one way or another whether Ms. Johnston-Forbes was injured; correct?" Tencer replied, "Correct. I'm just describing the forces that she probably felt during the collision."[3] 3 VRP at 340.

The jury returned a special verdict of "no" on the question of whether Matsunaga's negligence proximately caused Johnston-Forbes' injuries. CP at 64. Johnston-Forbes appeals.

---

[3] In response to Johnston-Forbes' questions on cross-examination, Tencer testified about the amount of "tissue stretch" caused by the impact. 3 VRP at 358. Johnston-Forbes also asked Tencer: "So wouldn't you also agree . . . if [the] distance between the seat and . . . driver, the greater it got, the greater the chance of injury? Wouldn't you agree to that?" 3 VRP at 365. He replied, "Yeah. Again, let's leave the injury term out of it." 3 VRP at 365.

ANALYSIS

Johnston-Forbes argues that the trial court erred in denying her motion in limine to exclude Tencer's testimony because (1) Tencer's underlying theory is not generally accepted in the scientific community, in violation of *Frye*[4]; (2) he is not a physician and could not testify about medical causation of injuries; (3) he "is not a licensed engineer, thus he [could not] testify to the engineering principles that form the basis of his opinions"; (4) he lacked the necessary foundation to testify about forces involved in the collision; and (5) his testimony violated ER 702 and 403.[5] Br. of Appellant at 28. These arguments fail.

## I. UNPRESERVED *FRYE* CHALLENGE

Johnston-Forbes did not challenge Tencer's testimony below as being not generally accepted in the scientific community; nor did she request a *Frye* hearing. We do not consider an issue a party raises for the first time on appeal unless that party demonstrates it involves a manifest error affecting a constitutional right. RAP 2.5(a)(3). More specifically, a party who fails to seek a *Frye* hearing below does not preserve this evidentiary challenge for review. *In re Det. of Post*, 145 Wn. App. 728, 755, 187 P.3d 803 (2008), *aff'd*, 170 Wn.2d 302, 241 P.3d 1234 (2010). Accordingly, we do not further address Johnston-Forbes' *Frye* challenge to Tencer's expert testimony.

---

[4] *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923).

[5] Although Johnston-Forbes told the trial court that she had no "problem with Mr. Tencer testifying," based on the full record of this hearing, we reject Matsunaga's request to treat this colloquoy as a waiver of her motion in limine. 1 VRP at 20.

## II. OTHER EXPERT TESTIMONY CHALLENGES

### A. Standard of Review

We review a trial court's determination of the admissibility of expert testimony for an abuse of discretion. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 683, 15 P.3d 115 (2000). If the basis for admission of the evidence is "fairly debatable," we will not disturb the trial court's ruling. *Grp. Health Coop. of Puget Sound, Inc. v. Dep't of Revenue*, 106 Wn.2d 391, 398, 722 P.2d 787 (1986) (internal quotation marks omitted) (quoting *Walker v. Bangs*, 92 Wn.2d 854, 858, 601 P.2d 1279 (1979)). Washington appellate courts generally do not weigh expert testimony. *See In re Marriage of Sedlock*, 69 Wn. App. 484, 491, 849 P.2d 1243 (1993).

### B. Medical Opinion

Johnston-Forbes challenges Tencer's expert testimony as improper medical opinion because, by comparing the collision forces to daily living activities (such as "walking 'down stairs' or 'jogging'")[6], the "clear message . . . was that this collision could not have *injured* [the] plaintiff." Br. of Appellant at 27.

We disagree that Tencer's testimony was medical in nature. Significantly, Tencer did *not* offer an opinion about whether the forces involved in the accident would or would not have caused personal injuries to anyone in general or to Johnston-Forbes in particular. On the contrary, he expressly stated that he would *not* testify about whether Johnston-Forbes' injury was possible at the speeds involved in this case. Tencer limited his testimony to the forces generated in the collision and his conclusion that the collision was not likely the source of significant forces

---

[6] Br. of Appellant at 25 (citing 3 VRP at 325-26).

acting on Johnston-Forbes' body. We hold that an expert's description of forces generated during a collision is not medical testimony.[7]

Johnston-Forbes also argues that even though Tencer disavowed an intent to give medical testimony, his opinions directly related to a medical issue—whether the force of impact was enough to injure her. She claims that Tencer's testimony improperly allowed the jury to infer that she could not have been injured in the accident. Johnston-Forbes relies on *Stedman v. Cooper*, 172 Wn. App. 9, 292 P.3d 764 (2012), in which Division One of our court affirmed a trial court's ruling excluding Tencer's testimony because it was "'logically irrelevant to the issue the jury must decide: the degree to which these particular plaintiffs were injured in this particular accident.'" *Stedman*, 172 Wn. App. at 18-19.

The *Stedman* court noted that Tencer did not provide medical testimony, but suggested that his opinions were misleading anyway:

> Tencer declared that . . . "[he] never described any threshold for injury in [his] opinions.'" Emphasizing that he testifies from a biomechanical rather than a medical perspective, he disavowed any intention of giving an opinion about whether Stedman got hurt in the accident. Nevertheless, his clear message was that Stedman could not have been injured in the accident because the force of the impact was too small. Indeed, according to [the defendant's] brief, Tencer's conclusion was exactly that: the forces generated by the impact were not sufficient to cause the type of injuries Stedman was claiming.

*Stedman*, 172 Wn. App. at 20 (footnotes omitted). The *Stedman* court also implied that Tencer's opinions should be excluded because they improperly allowed the jury to infer that the minimal accident forces could not have caused injury. *See Stedman*, 172 Wn. App. at 19-20.

---

[7] In a different case, we have previously held Tencer's testimony—that "the maximum possible force in [the] accident was not enough to injure a person"—was not a "medical opinion." *Ma'ele v. Arrington*, 111 Wn. App. 557, 564, 45 P.3d 557 (2002). Because Tencer provided no such testimony here, we do not need to address whether that holding remains good law.

To the extent that the *Stedman* court suggested that the force of impact is always irrelevant or that it is improper for a jury to infer that minimal force did not cause injury in a particular case, we disagree. The force of impact—whether slight or significant—is often relevant in personal injury cases. *See Murray v. Mossman*, 52 Wn.2d 885, 888, 329 P.2d 1089 (1958) (admission of automobile accident photographs not reversible error because they tended to show "force and direction of the impact" that resulted in injury); *Taylor v. Spokane, P. & S. Ry. Co.*, 72 Wash. 378, 379-80, 130 P. 506 (1913) (photograph properly admitted to show "probable force of the impact" where force of impact was material to whether passenger was actually injured). And there is nothing improper about allowing the jury to draw inferences from evidence explaining force of impact, as well as from other evidence, in determining proximate cause. We again emphasize the standard of review for a trial court's decision to allow or to exclude expert testimony: "The broad standard of abuse of discretion means that courts can reasonably reach different conclusions about whether, and to what extent, an expert's testimony will be helpful to the jury in a particular case." *Stedman*, 172 Wn. App. at 18.

Here, we hold that the trial court did not abuse its discretion in denying Johnston-Forbes' motion to exclude Tencer's force of impact testimony, especially in light of Matsunaga's limiting Tencer's testimony such that he did not offer any opinion about whether the forces in the accident were or were not sufficient to cause injury.

## C. Engineering Opinion

Johnston-Forbes next challenges Tencer's testimony because he "is not a licensed engineer, thus he cannot testify to the engineering principles that form the basis of his opinions."[8] Br. of Appellant at 28. Johnston-Forbes is incorrect.

ER 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Nothing in ER 702 requires an expert witness to be licensed in his profession to give testimony. On the contrary, practical experience alone may suffice to qualify a witness as an expert. *State v. Yates*, 161 Wn.2d 714, 765, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008). We hold that the trial court did not abuse its discretion in denying Johnston-Forbes' motion to exclude Tencer's expert testimony because he lacked an engineering license.

## D. Foundation Challenge

Johnston-Forbes bases her challenge to Tencer's testimony as lacking the necessary foundation on the following assertions: (1) He neither physically examined Johnston-Forbes' rental vehicle nor viewed any photographs of it; (2) he did not have an adequate description of the repair work performed on this rental vehicle; (3) Matsunaga took the photographs of her own vehicle, which Tencer used in his analysis, approximately three years after the collision; and (4)

---

[8] We note that the statutes governing the practice of engineering, which Johnston-Forbes cites in her brief, do not control the trial court's ability to conclude that a witness is qualified as an expert. *See* ER 702; RCW 18.43.010.

Tencer "did not have sufficient information to consider [Johnston-Forbes'] awkward positioning in the vehicle at the time of impact." Br. of Appellant at 35. Again, we disagree.

Johnston-Forbes' challenges to Tencer's testimony for lack of foundation go to the weight of the evidence, not its admissibility. *See Kaech v. Lewis County Pub. Util. Dist.*, 106 Wn. App. 260, 274-75, 23 P.3d 529 (2001), *review denied*, 145 Wn.2d 1020 (2002). Moreover, Johnston-Forbes ably raised these foundational challenges for the jury's consideration during Tencer's cross-examination. We hold that the trial court did not abuse its discretion in denying Johnston-Forbes' motion to exclude Tencer's testimony for lack of foundation.

### E. Relevancy Challenge under ER 702 and ER 403

Finally, Johnston-Forbes contends that Tencer's testimony was not helpful to the jury, as required by ER 702, and that its probative value was "'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,'" in violation of ER 403. Br. of Appellant at 36 (quoting ER 403). Johnston-Forbes focuses her argument on the prejudice she claims she suffered as a result of this testimony: She argues that (1) her "medical evidence that the collision caused her injury was strong"; and (2) had the trial court excluded Tencer's testimony, the jury's verdict would have likely been different, namely in her favor. Br. of Appellant at 39-40. The record does not support her characterization of the proceedings and evidence.

Although Johnston-Forbes testified that several hours after the accident she started having headaches and pain and stiffness in her neck, she also acknowledged that (1) one year after the collision, in August 2007, she had been involved in a golf cart collision in which she had flown forward and hit her chest on the steering wheel; and (2) two years later, in 2009, she

had been involved in a snowboarding accident, in which she had fallen and fractured her thumb. Consistent with Johnston-Forbes' description of her later sports-related accidents and injuries, Matsunaga's medical expert, Paul Tesar, testified that "there are many, many things in terms of life activities that can cause a herniated disc," including a "sneeze," "a swing," or any "slip and fall"; this testimony was uncontroverted. 2 VRP at 142. The record also shows that Johnston-Forbes waited over two years before filing suit against Matsunaga and nearly four years after the collision before obtaining an MRI showing a herniated disc. Based on this evidence, the jury could have reasonably concluded that Johnston-Forbes' pain and injury related back to one of these other previous accidents.

As is the case with evidentiary rulings in general, we review a trial court's ER 403 and ER 702 rulings with great deference under a manifest abuse of discretion standard. *See State v. Vreen*, 143 Wn.2d 923, 932, 26 P.3d 236 (2001). We find no abuse of discretion in the trial court's rejecting Johnston-Forbes' ER 702 and ER 403 challenges as bases for excluding Tencer's testimony.

We affirm.

Hunt, J.

We concur:

Worswick, C.J.

Maxa, J.

11