# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BRIANNA P. CHANDLER, as personal representative for estate of KAHIL M. MARSHALL, | No. 49580-5-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON; DEPARTMENT OF TRANSPORTATION; SHELTON SCHOOL DISTRICT #309, a municipal corporation; SUZAN J. MONTANO-FELTON and JOHN DOE MONTANO-FELTON, husband and wife and the marital community comprised thereof; NATHEN R. WRIGHT and JANE DOE WRIGHT, husband and wife and the marital community comprised thereof, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, A.C.J. — Brianna P. Chandler, as personal representative of her mother's estate, brought a wrongful death action after her mother was killed in a car accident involving a Shelton School District school bus. Chandler argues that (1) the jury verdict in favor of the defendants was not supported by substantial evidence, (2) the language of the special verdict form created a presumption that one of the named defendants was solely responsible for the accident, (3) the jury failed to complete the damages section of the special verdict form, (4) the trial court erred in excluding expert testimony related to future child care support costs, and (5) the trial court abused its discretion in denying Chandler's motion for a new trial following the jury verdict. We affirm.

FACTS

A.    BACKGROUND

In the early morning hours of October 27, 2010, Nathen Wright drove his vehicle into the back of a Shelton School District school bus driven by Suzan J. Montano-Felton.  Wright's girlfriend, Kahil M. Marshall, was seated in the passenger seat of Wright's vehicle during the collision and died as a result of the crash.

Chandler, as personal representative of Marshall's estate, filed a wrongful death action against Wright, the Washington State Department of Transportation,[1] the School District, and Montano-Felton.  Chandler alleged that on the morning of the accident, Montano-Felton had operated the school bus in a negligent manner and that the School District had negligently failed to supervise Montano-Felton.  Wright failed to respond to the lawsuit and, a default judgement was entered against him.

B.    TRIAL

1.    Testimony Regarding the Accident

Wright testified that he and the school bus were driving in adjacent lanes moments before the collision.  Wright glanced down at the radio for three seconds, and when he looked up, the bus was right in front of him.  According to Wright, he did not have an opportunity to brake and could not avoid the collision.

Ed Wells, an accident reconstructionist, corroborated Wright's version of the events. Based on his reconstruction of the accident scene, Wells concluded that the school bus changed

---

[1] The Washington State Department of Transportation was later dismissed from the lawsuit by agreed order of the parties.

lanes right in front of Wright, giving him only two and a half seconds to react. According to Wells, Wright did not have time to avoid the collision.

Montano-Felton admitted that in the week before the accident, she had made several personal phone calls while on duty in violation of the school district's policies. She also admitted that she had been reprimanded for using her Bluetooth in violation of school policy while on duty in 2009.

During her time working for the School District, Montano-Felton had been involved in several accidents. In 2001, Montano-Felton hit another bus while pulling her bus into the service bay. Law enforcement also recorded Montano-Felton speeding while driving the school bus in 2002. She also hit a vehicle in 2003, causing injuries to two students aboard her bus. In 2006, she hit a pedestrian in a crosswalk with her school bus.

Montano-Felton also testified that she was not using her phone when Wright's vehicle collided into the back of her school bus. According to Montano-Felton, she was already driving in the left lane, waiting to make a left turn when Wright drove his vehicle into the back of her school bus.

Sandi Thompson, Montano-Felton's supervisor, confirmed that Montano-Felton hit another bus in 2001 and that the School District determined that the accident was preventable. Thompson explained that the School District issued a written warning to Montano-Felton for speeding in 2002. The School District also determined Montano-Felton's 2003 accident was preventable and required her to complete one to two hours of retraining as a result. Thompson admitted that she witnessed Montano-Felton using her Bluetooth while on duty in 2009. But she

also testified that nothing in the phone records showed that Montano-Felton was on the phone at the time of the October 27, 2010 accident.

Steven Cole, an eyewitness to the accident, testified that he was driving on the highway the morning of the accident when he noticed Wright's vehicle driving erratically behind him. Cole saw Wright's vehicle weave in and out of several lanes, drift back and forth in the same lane, and swerve around traffic. At one point, Wright's vehicle drifted into Cole's lane, forcing Cole to maneuver his vehicle onto the shoulder of the road in order to avoid a collision. Cole continued to watch Wright's vehicle after it passed him. Cole saw Wright's vehicle approach the school bus from behind and crash into the back of the school bus. According to Cole, the school bus did not change lanes just prior to the accident and Wright's brake lights were not on in the moments leading to the crash.

2.      Testimony Regarding Economic Damages

Marshall was survived by five children and three grandchildren. Two of her grandchildren lived in Washington and one grandchild lived in Arizona. At the time of the accident, none of Marshall's children lived with her.

At trial, Chandler sought to introduce the expert testimony of economist William Brandt regarding the economic damages in the case. During voir dire of Brandt outside the presence of the jury, Brandt testified that he had analyzed the support costs Marshall would have provided for her surviving children. Specifically, Brandt had calculated the "child care [costs] that [Marshall] might have provided" for her grandchildren. 3 Verbatim Report of Proceedings (VRP) (July 14, 2016) at 491.

4

Brandt explained that he had not been provided any specific information as to the level of child care support Marshall had provided to her grandchildren. His calculations were based on Marshall caring for her existing grandchildren, as well as for future grandchildren that her daughters might birth sometime in the future. He was "given some guidelines as to the calculations that [he] should make." 3 VRP (July 14, 2016) at 491. These guidelines were that each of Marshall's children would "likely have required" five hours of child care assistance per month until their oldest child reached the age of 16. 3 VRP (July 14, 2016) at 491. He then calculated the monetary value of those child care services over a 16 year period of time for each daughter. When asked where he got the five hour per month figure, Brandt explained that he was given the number and asked to provide a calculation under those assumptions.

The defendants argued that Brandt's testimony should be excluded because none of Marshall's children lived with her at the time of the accident and Brandt admitted that his calculations were solely based on a number given to him by Chandler. Further, Brandt's calculations were based on an assumption that some of Marshall's daughters would have children in the future and that Marshall would have provided child care to her future grandchildren.

The trial court found that Brandt's testimony was based on speculation because it required a finding that all of Marshall's daughters would ultimately have children in the future and that once they did, Marshall would have ultimately provided child support to her future grandchildren. Thus, the trial court ruled that Brandt's testimony regarding child care support calculations for Marshall's grandchildren was inadmissible.

3.      Jury Instructions and Verdict

The jury returned a special verdict that Montano-Felton was not negligent and was not a proximate cause of injury and damage to Marshall. The jury also returned a special verdict that the School District was negligent, but that the School District's negligence was not a proximate cause of injury and damage to Marshall.[2]

The special verdict form instructed the jury that "[a] default judgment has been entered against [Wright] therefore no determination need be made" as to Wright's negligence. Clerk's Papers (CP) at 24 (emphasis omitted). As to damages, the special verdict instructed the jury that if it found that none of the defendants were the proximate cause of Marshall's injury and damage, then the jury need not reach the questions relating to damages. The jury did not fill out the portion of the verdict form related to damages. Chandler did not object to the special verdict form provided to the jury.

C.      MOTION FOR NEW TRIAL

Following the jury verdict, Chandler filed a motion for a new trial pursuant to CR 59 (1), (2), (7), and (9). Chandler argued that the jury verdict was not supported by substantial evidence because she had presented evidence that the school district had continued to allow Montano-Felton to drive despite numerous incidents and disciplinary actions and that Montano-Felton had "cut-off" Wright's vehicle, which left Wright no time to react and avoid the collision. CP at 27.

Chandler also argued that substantial justice had not been done because the jurors' comments following the verdict "strongly indicate[d] that they did not properly understand how to

---

[2] The only jury instruction provided regarding the School District's negligence went to vicarious liability.

6

apply their factual conclusions to the law."  CP at 31.  Specifically, when the jurors spoke with counsel following the verdict, they expressed concern that Montano-Felton was not fit to be a school bus driver, and one juror stated that she would not want Montano-Felton transporting her grandchildren to school.

The trial court denied Chandler's motion for a new trial.  Chandler appeals.

## ANALYSIS

A.  SUBSTANTIAL EVIDENCE TO SUPPORT JURY VERDICT

Chandler appears to argue that the jury verdict was not supported by substantial evidence because the evidence at trial showed that Montano-Felton routinely engaged in dangerous driving behaviors in violation of Shelton School District policies and that the Shelton School District was aware of the danger Montano-Felton posed.  We disagree.

1.  Standard of Review

We review a jury verdict for substantial evidence.  *Gorman v. Pierce County*, 176 Wn. App. 63, 87, 307 P.3d 795 (2013), *review denied* 179 Wn.2d 1010 (2014).  Substantial evidence is evidence "sufficient to persuade a rational, fair-minded person that the finding is true."  *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012).  When reviewing a jury verdict for substantial evidence, we view the evidence in the light most favorable to the nonmoving party.  *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 769, 260 P.3d 967 (2011), *review denied*, 173 Wn.2d 1029 (2012).  And we defer to the trier fact on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence.  *Id.*

2.    Negligence of Montano-Felton

Chandler argues that the jury verdict finding Montano-Felton not negligent was not supported by substantial evidence because the evidence at trial showed that Montano-Felton routinely disregarded the School District's operational policies and had been responsible for several accidents in the years prior to the collision with Wright. Chandler also notes that Wells testified that Montano-Felton abruptly switched into Wright's lane of travel, leaving Wright no time to react and avoid the collision. We find Chandler's argument unpersuasive.

The elements of negligence are duty, breach, proximate cause, and damages. *Mathis v. Ammons*, 84 Wn. App. 411, 415-16, 928 P.2d 431 (1996), *review denied*, 132 Wn.2d 1008 (1997). Duty is the duty to exercise ordinary care, while breach is a failure to exercise ordinary care. *Id.* at 416. Stated another way, breach is "the failure to exercise such care as a reasonable person would exercise under the same or similar circumstances." *Id*. Breach is also referred to as "negligence." *Id*.

While there is evidence that Montano-Felton caused a number of traffic accidents between 2001 and 2006, there was no evidence that Montano-Felton did some act that a reasonable person would not do under the same or similar circumstances on the morning of October 27, 2010. And even though the evidence at trial showed that Montano-Felton had previously been reprimanded for using her cell phone and Bluetooth while on duty, there was no evidence showing that Montano-Felton was on her phone at the time of the collision on October 27, 2010. In fact, Montano-Felton testified that she was not using her phone when Wright's vehicle collided into the back of her bus. Viewing the evidence in the light most favorable to Montano-Felton, a reasonable

fact finder could conclude that Montano-Felton was not using her phone while operating her school bus on the morning of October 27, 2010.

As to Wells's testimony, we defer to the trier of fact on issues of conflicting testimony, credibility of the witnesses, and the persuasiveness of the evidence. *McCoy*, 163 Wn. App. at 769. Even if convinced that a wrong verdict has been rendered, as long as there was evidence which would have supported the verdict if believed, we will not substitute our judgment for that of the jury. *Estate of Stalkup v. Vancouver Clinic, Inc., PS*, 145 Wn. App. 572, 586, 187 P.3d 291 (2008).

And, even though Wells testified that Montano-Felton must have abruptly changed lanes in front of Wright, Cole testified that he saw Wright driving erratically moments before the collision. Cole also testified that he saw Wright's vehicle approach the school bus from behind and that the school bus did not abruptly changes lanes moments before the collision. Viewing this evidence in the light most favorable to Montano-Felton, there was substantial evidence to support the jury's finding that Montano-Felton did not fail to exercise ordinary care on the morning of the accident, and thus was not negligent.

3.      Negligence of the School District

Chandler also appears to argue that the jury's verdict finding that the School District was not the proximate cause of Marshall's injury and damage was not supported by substantial evidence. We disagree.

Chandler's argument focuses on the evidence showing that the School District knew Montano-Felton had used her phone while on duty in the past and had been involved in several accidents over the course of her employment with the School District. However, as discussed above, there was no evidence showing that Montano-Felton was using her phone when Wright

9

collided with the back of her school bus. And Cole testified that the school bus Montano-Felton was driving did not change lanes in front of Wright's vehicle moments before to the accident. Instead, Cole saw Wright's vehicle weaving in and out of traffic and collide into the back of the school bus without braking. Therefore, the evidence at trial supported the jury's finding that any negligence by the School District was not the proximate cause of the accident. We hold that Chandler's challenge to the jury verdict on this basis fails.

B.      SPECIAL VERDICT FORM LANGUAGE

Chandler assigns error to the special verdict form because it stated that "[a] default judgment has been entered against [Wright] therefore no determination need be made." CP at 25. According to Chandler, this language prejudiced the jury against Wright and created a presumption that Wright was wholly responsible for the accident and the resulting injuries to Marshall. However, Chandler never objected to the special verdict form at trial, nor did she propose an alternative special verdict form. Therefore, we do not address this assignment of error. *Lahmann v. Sisters of Saint. Francis of Philadelphia*, 55 Wn. App. 716, 723, 780 P.2d 868 (1989) ("[Appellant]'s failure to object to the form of the special verdict instruction while the trial court still had control over the form to be presented to the jury precludes consideration of the issue on appeal.")

C.    FAILURE TO AWARD DAMAGES

Chandler appears to assign error to the jury's failure to complete the portion of the special verdict form regarding damages.[3]  She argues that the verdict form did not allow the jury to find Montano-Felton and the School District jointly and severally liable for the damages caused.  But Chandler never objected to the special verdict form at trial and, therefore, cannot make such challenge for the first time on appeal.  *Id.*

Chandler also argues that the jury failed in their duty because they never made a finding of damages on the special verdict form.  However, the special verdict form instructed the jury to only make a finding of damages if it first found that one or more defendants were the proximate cause of injury and damage to Marshall.  Because the jury found that Montano-Felton and the Shelton School District were not the proximate cause of injury and damage to Marshall, and the verdict form instructed the jury to not make any finding as to Wright, the jury simply followed the instructions of the verdict form by not making a finding as to damages.  Thus, Chandler's assignment of error on this basis fails.

D.    LIMITING DAMAGES EVIDENCE CHANDLER COULD PRESENT

Chandler argues that the trial court erred in precluding Brandt's testimony regarding the child care support costs Marshall may provide for her grandchildren in the future.[4]  We disagree.

---

[3] Chandler contends that the "court erred" in failing to award damages, even though the proceeding below was a jury trial.  Br. of Appellant at 28.

[4] Chandler also appears to argue that the trial court erred in excluding evidence related to "compensation for the loss of financial provision and for the loss of love and affection" of her children.  Br. of Appellant at 33.  However, the record shows that Chandler never proferred any testimony as to these types of damages.  The only testimony Chandler sought to introduce

1.      Standard of Review

The trial court is afforded wide discretion in ruling on the admissibility of expert testimony. *Johnston-Forbes v. Matsunaga*, 181 Wn.2d 346, 352, 333 P.3d 888 (2014).  We will not disturb a trial court's ruling on admissibility of expert opinion testimony absent an abuse of such discretion. *Id*.  "A trial court abuses its discretion if it relies on unsupported facts, applies the wrong legal standard, or adopts a position no reasonable person would take." *In re Det. of McGary*, 175 Wn. App. 328, 337, 306 P.3d 1005, *review denied,* 178 Wn.2d 1020 (2013).  We will not disturb the trial court's ruling if the basis for admitting the expert testimony is fairly debatable.  *Johnston-Forbes*, 181 Wn.2d at 352.

2.      The Trial Court did not Abuse its Discretion

Chandler appears to argue that the trial court abused its discretion in excluding Brandt's testimony calculating the value of the child care support services Marshall would have rendered to her grandchildren.  However, Brandt's calculations were based on Marshall caring for her current grandchildren, as well as her caring for future grandchildren that her daughters might birth sometime in the future.  Chandler cites to no authority holding that a plaintiff may recover the value of child support services that may be rendered to hypothetical grandchildren that have yet to be born or conceived.[5]

---

regarding the extent of damages in this case was through Brandt's testimony on the value of future child care support.

[5] Instead, she cites to a case in which our Supreme Court addressed whether parents could recover damages for the loss of love and companionship, as well as the destruction of the parent-child relationship, following the death of their seven year old child.  *Hinzman v. Palmanteer*, 81 Wn.2d 327, 501 P.2d 1228 (1972).  Chandler does not explain how *Hinzman* applies here.

Further, Brandt's child support calculations related to Marshall's present grandchildren were based on an assumption that Marshall would have provided five hours of child care assistance per month for 16 years of each grandchild's life. However, nothing in the record shows that Marshall provided child care assistance for her grandchildren. In fact, one of Marshall's grandchildren lived in Arizona. An expert opinion may not be based on assumptions for which there is no factual basis. *See Riccobono v. Pierce County*, 92 Wn. App. 254, 268, 966 P.2d 327 (1998). Because there was no factual basis to support Brandt's calculation that Marshall would have provided five hours of child care assistance to each grandchild (that she had or may have had in the future) for 16 years of their lives, it was not manifestly unreasonable for the trial court to exclude such testimony. We hold that Chandler's argument on this basis fails.

E.      MOTION FOR A NEW TRIAL

Chandler argues that the trial court abused its discretion in denying her motion for a new trial pursuant to CR 59(a)(7) and (9). We disagree.[6]

1.      Standard of Review

We review an order denying a motion for a new trial under CR 59(a) for abuse of discretion. *Aluminum Co. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 537, 998 P.2d 856 (2000). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Rosander v. Nightrunners Transp., Ltd.*, 147 Wn. App. 392, 403, 196 P.3d 711 (2008). Exercise of the trial court's discretion might result in a decision upon which reasonable minds may differ,

---

[6] Chandler also argues that the trial court erred in denying her motion to enter a judgment notwithstanding the verdict. However, the record shows that Chandler never moved for judgment notwithstanding the verdict, but instead solely moved for a new trial and additional time to obtain sworn juror testimony.

but we must uphold such decision if it is within the bounds of reasonableness. *In re Estate of Stevens*, 94 Wn. App. 20, 30, 971 P.2d 58 (1999).

      2.     The Trial Court did not Abuse its Discretion

Under CR 59(a)(7), upon motion of an aggrieved party, the trial court may vacate a jury verdict and grant a new trial where there is "no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law." Also, under CR 59(a)(9), the trial court may vacate a verdict when "substantial justice has not been done." Because of the other broad grounds for relief afforded under CR 59(a), courts rarely grant reconsideration for lack of substantial justice. *Sligar v. Odell*, 156 Wn. App. 720, 734, 233 P.3d 914 (2010), *review denied*, 170 Wn.2d 1019 (2011).

Chandler appears to argue that there was no evidence or reasonable inference from the evidence to justify the jury verdict because the evidence showed that all of the defendants were negligent. However, as discussed above, substantial evidence supported the jury verdict that Montano-Felton was not negligent and that the Shelton School District was not the proximate cause of injury to Marshall.

Chandler also fails to explain how the trial court's denial of her motion amounted to denial of substantial justice. Instead, she again argues that the "jury failed in their duty to make any determination" as to damages. Br. of Appellant at 38. But, as explained above, the jury was instructed to not determine damages if it found that neither Montano-Felton nor the Shelton School District were the proximate cause of injury to Marshall.

The trial court's order denying Chandler's motion for a new trial was not manifestly unreasonable or based upon untenable grounds. Therefore, Chandler's argument fails.

No. 49580-5-II

ATTORNEY FEES

Chandler requests attorney fees on appeal pursuant to RAP 14.2 and RAP 18.1. Under RAP 14.2, "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review." Because Chandler does not prevail on review, she is not entitled to costs pursuant to RAP 14.2. And even though Chandler devotes a portion of her opening brief to request fees and expenses, as required by RAP 18.1(b), she fails to cite to any applicable law granting her the right to recover reasonable attorney fees on review before this court, as required by RAP 18.1(a). Therefore, we deny her request for attorney fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Bjorgen, J.

_____
Melnick, J.

15