IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RICHARD EGGLESTON and<br>SHANNON EGGLESTON,<br>husband and wife, | )<br>)<br>)<br>) | No. 39538-3-III |
| Respondents, | )<br>) | |
| v. | )<br>) | UNPUBLISHED OPINION |
| ASOTIN COUNTY, a public agency; and<br>ASOTIN COUNTY PUBLIC WORKS<br>DEPARTMENT, a public agency, | )<br>)<br>)<br>) | |
| Appellants. | )<br>) | |

LAWRENCE-BERREY, C.J. — This dispute is before us a second time. The first jury awarded Richard and Shannon Eggleston $1.65 million for their claims against Asotin County for breach of contract, inverse condemnation, and water trespass. Because that verdict exceeded the range of evidence, the first trial court granted the County's motion for a new trial unless the Egglestons consented to a remittitur to $1 million. In the letter decision preceding the written order, however, the court made comments that our court in the first appeal construed as limiting a second trial to damages. We affirmed the remittitur order and remanded for a new trial on damages.

The second jury awarded the Egglestons $1.881 million for their claims against the County. The County appeals this verdict, and the Egglestons cross appeal. For the reasons discussed below, we affirm in part, reverse in part, and remand.

We affirm the second jury's verdict of $150,000 for water trespass and $1 million for inverse condemnation.  We reverse and remand for the trial court to recalculate the Egglestons' attorney fee sanctions award and for a new trial on the Egglestons' breach of contract claims.  In addition, we deny the Egglestons relief on their cross appeal and award them 25 percent of their reasonable attorney fees on appeal.

## FACTS

### A.  BACKGROUND[1]

In 2009, Asotin County planned to replace the 10-Mile Bridge on Snake River Road located off the southwest corner of what was purportedly eight acres of land owned by the Egglestons.  The property is located in Asotin County and is bordered on the east by the Snake River, on the south by 10-Mile Creek and on the west by Snake River Road.

The County engaged the services of Washington State Department of Transportation agent Melinda Raber to assist in negotiating property acquisitions from owners along the project route.  Raber discussed the terms on which the County could acquire the property with the Egglestons and kept a diary of her communications with them and others.  Plans were ultimately prepared and agreed upon.

---

[1] The facts in sections A and B are from this court's opinion in *Eggleston v. Asotin County*, No. 36580-8-III (Wash. Ct. App. Mar. 11, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/365808_unp.pdf (*Eggleston* I).

Among ramifications for the Egglestons from the bridge project was its potential interference with a business driveway they used for Aardvark's, a business they had operated since 2002 on the beachfront property on the Snake River. Aardvark's rented jet boats and watercraft. They also offered guided trips up the river. The Egglestons brought in about $35,000 per year from Aardvark's operations. Patrons reached the beach by using a driveway on the south edge of the property (the "business driveway").

After extensive negotiations, the Egglestons agreed to sell the County .38 acres of land and a temporary construction easement. The County agreed to pay a certain sum for fee title to .38 acres and the easement, and foreseeable damages to the Egglestons during the project construction. In addition to the payment, the County agreed to undertake or refrain from doing other things, principal among them being to preserve the business driveway and reroute the Egglestons' waterline and preserve their access to it. There was also an agreement related to building rockeries.

The Egglestons were paid as promised, and the County began construction in or about July 2010. About three months into the work, construction unearthed artifacts and cultural resources, which resulted in the project being temporarily shut down. By then, the superstructure of the bridge had been built and the roadway on the southwest corner of the Eggleston property had been raised with fill, leaving a five-foot drop from the roadway to the business driveway. It was not an immediate problem because it was fall

3

moving into winter. By February 2011, however, Mr. Eggleston began pressing the County to use fill to raise the level of the business driveway in preparation for Aardvark's opening. The County refused but offered to build a temporary gravel business driveway connected to the Egglestons' residential driveway. That was unacceptable, so the Egglestons sold their boats and closed their business.

The bridge project started again in late 2012. In early April 2013, the County's contractor was finally ready to reconstruct the Egglestons' business driveway. As designed by the County, the reconstructed driveway had a more northerly access from Snake River Road and would encroach on the Egglestons' pasture. The Egglestons wanted it closer to the bridge, south of their pasture. Workers on site were directed by the County to accommodate the Egglestons' wishes for the driveway's location, even though County engineers knew that guardrails to be installed would not permit a straight, direct access to the driveway they were constructing. When the guardrails were staked out the next day and Mr. Eggleston was told that his access would be constructed to circle around them, he said he no longer wanted the driveway. At some point during the project, Mr. Eggleston parked his tractor and horse trailer in such a way that prevented the County from going onto the pastureland to finish the business driveway.

4

B.  FIRST TRIAL AND APPEAL

The Egglestons filed suit against Asotin County and the Asotin County Public

Works Department alleging damages for breach of contract, inverse condemnation, and

water trespass.  The breach of contract claim was based on the County's alleged failure to

perform under the agreement entered into by the parties prior to the commencement of

the project.  The inverse condemnation claim alleged the County wrongly took the

Egglestons' property by refusing to install the business driveway and then blocking the

installed driveway with a guardrail.  The Egglestons further alleged inverse

condemnation because they claimed the County diverted stormwater onto their land.

Finally, the water trespass claim was based on the County's channeling of stormwater

onto the Egglestons' property.

The case proceeded to a five-day jury trial.  In closing argument, the Egglestons'

lawyer asked the jury to award $1 million in damages.  The trial court instructed the jury

that the Egglestons' breach of contract claim had three components—the County's

alleged (1) failure to construct rockeries, (2) interference with the business driveway, and

(3) failure to reroute a waterline.  The instructions stated the inverse condemnation

claims had two components: (1) loss of access to the Egglestons' business driveway, and

(2) stormwater intrusion down their residential driveway and onto their pastures.  Finally,

as an alternative to the water intrusion portion of the inverse condemnation claim, the

5

Egglestons' water trespass claim asserted negligent or intentional channeling and discharge of stormwater onto their property causing damage.

The jury found the County liable for breach of contract in the amount of $800,000 but did not determine which of the various asserted contract breaches had been proved. In addition, the jury found the County liable for inverse condemnation in the amount of $600,000, and water trespass in the amount of $250,000[2]—for a total award of $1.65 million.

The County moved for a new trial on the basis that the damage award was unsupported by the evidence. Nothing in the County's motion limited its request for a new trial to damages. The Egglestons opposed the County's motion.

In a letter decision dated December 31, 2018, the trial court wrote, "There were no obvious errors that would justify granting a new trial to readdress liability issues." Clerk's Papers (CP) (36580-8) at 75 (first trial). The court then described some but not all of the liability issues argued at trial:

> There was ample basis in the facts for the jury to conclude that the Defendants breached the County's contract with the Plaintiffs by not building the rockeries as the parties had earlier agreed; that the Defendants inversely condemned Plaintiffs' property by rendering useless their

---

[2] The jury was instructed to award damages for water intrusion either through an inverse condemnation verdict or a water trespass verdict. Because the jury assigned the Egglestons' water intrusion claim to its water trespass verdict, the jury's inverse condemnation verdict relates solely to the Egglestons' loss of business driveway claim.

6

>  business driveway; and that Defendants committed a trespass by
>  improperly directing water onto the Plaintiffs' land.

CP (36580-8) at 75.

The trial court agreed with the County that there was no evidence to justify a

$1.65 million verdict and determined that the jury must have based its award on a desire

to punish the County. Accordingly, the court concluded it would grant the County's

motion for a new trial unless the Egglestons consented to a remittitur to $1 million.

The Egglestons refused remittitur, and the court entered an order granting the County's

motion for a new trial. Nothing in the order limited the new trial to damages.

The Egglestons appealed, and we affirmed. In affirming, we wrote: "The trial

court's order of a new trial on damages is affirmed." *Eggleston v. Asotin County*,

No. 36580-8-III, slip op. at 15 (Wash. Ct. App. Mar. 11, 2021) (unpublished),

https://www.courts.wa.gov/opinions/pdf/365808_unp.pdf. (*Eggleston* I). The County

did not request reconsideration or clarification of our remand instructions.

### C. SECOND TRIAL

#### 1. Evidentiary Rulings

Before and during trial, the parties argued a number of motions to the court, some

of which are contested on appeal.

*Liability versus damages*

The Egglestons filed a motion to ensure that the scope of the second trial was limited to damages and to prevent the County from denying liability on any of its three claims—breach of contract, inverse condemnation, and water trespass. The County agreed that retrial was limited to damages on those claims but argued it was entitled to dispute the scope and causation of damages related to them. Also, it noted there were three components to the Egglestons' breach of contract claim, and the first jury's verdict had not determined which of these components had been proved. The trial court viewed the parties as being in general agreement, granted the Egglestons' motion, but said it had yet to determine how to inform the second jury that liability had been established.

*Ownership of riverfront property*

After remand, the County learned the Egglestons did not own the entire eight acres at issue in the first trial. It learned that the Egglestons owned only the three acres abutting the bridge improvement area and the remaining five acres, which included the riverfront property, were owned by K&C Ten Mile Properties, LLC. K&C was formed by Ms. Egglestons' parents, and "96 or 98%" of the ownership had been transferred to Ms. Eggleston and her and Mr. Eggleston's children. CP at 1284.

The County took the position that it was not liable to the Egglestons for inverse condemnation of the interior five acres. In response, the Egglestons filed a motion for

8

judicial estoppel, asking the court to prevent the County from arguing that they did not own the riverfront property where Aardvark's had operated. The Egglestons asserted the County's 2018 discovery admissions that "Plaintiff operated Aardvark's on a portion of his property" and "the business driveway was for customers to access Aardvark's," amounted to the County taking a position that the Egglestons owned the five acres. CP at 1280-81. Somewhat contradictory to this, they also argued the County knew that K&C owned the five acres, as evidenced by a plat map the County had provided them years earlier in the litigation. The County replied it had not received any benefit in the first trial from its erroneous belief of who owned the property, so judicial estoppel did not apply.

The trial court expressed concern that the County's delay in raising this issue may have prevented the Egglestons from adding K&C as a party. It also questioned whether the fact that K&C owned the interior five acres was simply a technicality, because K&C was owned almost entirely by Ms. Eggleston and her children:

> I mean, isn't that really—aren't we really talking about a technicality here that the claim was brought solely in the name of Richard and Shannon Eggleston? And the county's argument now is: Well, wait a second. They're not individually the fee simple owner of this property. Really, there's some leaseholds and there's some corporations, and maybe the children had some interest and whatnot.
>     . . . .
>     We're still talking about the same property, the same business, the same claim for damages, correct?

9

1 Rep. of Proc. (RP) (June 3, 2022) at 74-75. The court further noted the County should have earlier known who owned the property, and K&C's ownership of the interior five acres should not have been a surprise, given that the County, itself, maintained the property ownership records.

The trial court granted the Egglestons' motion for judicial estoppel. In its written order, it found that the Egglestons had not engaged in any fraud, misrepresentation, or other wrongdoing, and additionally emphasized that issues of liability will not be retried.

*New theory of damages for breach of rockeries agreement*

In the first trial, the Egglestons sought damages for the County's failure to build rockeries based on the difference between the property's value with and without the rockeries. In the second trial, the Egglestons sought damages based on the cost of building the rockeries. The County objected on the bases that the Egglestons had elected their remedy in the first trial and because the cost to build the rockeries greatly exceeded the diminished value caused by the lack of rockeries. The court agreed with the County and precluded the Egglestons from arguing their new theory of recovery.

*Exclusion of County witnesses and exhibits*

In addition to these rulings, throughout trial, the court had to rule on the admissibility of various testimonies and exhibits. We discuss these issues later.

2. Trial

The second trial spanned one month. During opening statements, the County raised arguments related to the scope of its liability with respect to the breach of contract claims. It stated there was a dispute over whether the County had agreed to install a six-inch waterline or a six-inch sleeve. According to the County, it had agreed to install a six-inch sleeve and had done so. The County also claimed it had agreed to install a single retaining wall between two of the approaches to the Egglestons' property but had not agreed to install retaining walls "on all slopes." RP (Oct. 6, 2022) at 13 (County's Opening Statement). Further, the County asserted it had a temporary easement on the Egglestons' property for the duration of construction and the Egglestons knew they would temporarily lose the use of their business driveway, and so the County was not liable for these temporary damages. As to the waterline issue, the County argued it actually performed the contract in a manner that caused no damages to the Egglestons. As to the surface water runoff and water trespass claims, the County maintained the amount of runoff after the project was less than the amount before the project, and the only water trespass was the water diverted down the driveway. The County argued it had installed a catch basin that initially collected about 90 percent of the diverted runoff but was altered in 2019 so that it captured 100 percent of the runoff.

After the County's opening statement, the Egglestons objected that the County was improperly attempting to relitigate issues of liability. The Egglestons asked the trial court to give the jury a curative instruction to remedy the improper arguments and additionally asked the court to find counsel in contempt and place him in jail.

Before hearing from the County, the court quoted from two sources that it believed defined the scope of the second trial. The first source was the late 2018 letter decision, granting remittitur:

> There were no obvious errors that would justify granting a new trial to readdress liability issues. There was ample basis in the facts for the jury to conclude that the Defendants breached the County's contract with the Plaintiffs by not building the rockeries as the parties had earlier agreed; that the Defendants inversely condemned Plaintiffs' property by rendering useless their business driveway; and that Defendants committed a trespass by improperly directing water onto the Plaintiffs' land.

CP (36580-8) at 75, quoted in RP (Oct. 6, 2022) at 12 (motion for contempt).

> The second source was from a passage in the statement of facts in *Eggleston* I:

> In addition to making that payment, the County agreed to undertake or refrain from doing other things, principal among them being to build rockeries on all new slopes on and adjacent to the Egglestons' property, to preserve the business driveway, and to reroute the Egglestons' water line and preserve their access to it.

*Eggleston* I, No. 36580-8, slip op. at 3, quoted in RP (Oct. 6, 2022) 12 (motion for contempt).

The court, believing that the scope of retrial had been limited by the two quoted sources, invited the County to convince it otherwise. The County responded in detail as to each of the Egglestons' claims and why the first jury's award was sufficiently indefinite so that most if not all of the claims could be relitigated.

The trial court, unmoved by the County's argument, gave the following curative instruction to the jury:

> After a liability trial, Asotin County was found to be solely liable for breaching their contract with the Egglestons in the following manner:
> The county failed to properly install the waterline. The county failed to build rockeries on all new slopes on or adjacent to the property. The county failed to preserve the Egglestons' business drive access.
> It was determined that Asotin County is liable for taking away the plaintiffs' access to their business driveway. And it was determined that the county committed water trespass.
> Anything . . . said during [the County's] opening statement stating, suggesting, or commenting that there are facts that the county is not liable should be disregarded.
> . . . .
> Your sole job in this trial is to determine the damages caused by the county based on its previously determined liability.

1 RP (Sept. 7, 2022) at 267-68.

At the conclusion of the case, the trial court instructed the jury in a manner consistent with the above curative instruction, based on its belief that the law of the case constrained the scope of the County's arguments.

13

The jury ultimately returned a verdict of $1.881 million, comprised of the following:

- $40,000 for the failure to properly install and locate the waterline

- $175,000 for the failure to install rockeries on all new slopes

- $516,000 for the failure to preserve access to the business driveway

- $150,000 for the water trespass

- $1,000,000 for the taking of the business driveway

*See* CP at 4147-48.

### 3. Posttrial Proceedings

At several points during the trial, the Egglestons accused the County's attorney of contemptuous behavior. Following trial, the Egglestons noted their multiple motions for contempt for a hearing. During the hearing, although the trial court stated it had concerns with the behavior of the County's attorney, it denied the motion for contempt.

The Egglestons then filed a motion requesting that the trial court award the entirety of their attorney fees from both trials. The trial court substantially granted the motion, determining that the Egglestons were statutorily entitled to attorney fees related to their inverse condemnation claim and were entitled to the remainder of their fees as CR 37 and other type of sanctions.

14

On December 1, 2022, one week after the trial court had entered judgment on the second jury's verdict, the County filed a CR 59 motion for a new trial. The County noted the motion to be heard on December 27, 2022.

The trial court orally denied the County's motion and entered its written order on January 23, 2023. In its order, the court found that grounds 1 through 18 raised by the County were grounds that it had previously addressed, and the County had not sought permission to file the redundant motions nor did it establish good cause for doing so. Accordingly, referring to its previous rulings, the court rejected grounds 1 through 18. However, the court noted that ground 19 was a new ground alleging jury misconduct and denied that ground on its merits.

The County filed a notice of appeal on February 14, 2023, and the Egglestons filed a cross appeal 10 days later. On the same day they filed their opening brief, the Egglestons filed a motion to dismiss the County's appeal as untimely. That motion was referred to this panel.

ANALYSIS

ISSUE 1: TIMELINESS OF APPEAL

In their motion to dismiss, the Egglestons argue the County's appeal should be dismissed as untimely. We disagree.

15

The application of court rules to a set of facts is a question of law reviewed de novo. *Singleton v. Naegeli Reporting Corp.*, 142 Wn. App. 598, 603, 175 P.3d 594 (2008). Under RAP 5.2(a), a party generally must file a notice of appeal within 30 days of the entry of the decision they are seeking review of or within the time provided in RAP 5.2(e). RAP 5.2(e) allows a notice of appeal to be filed within 30 days of a trial court's order deciding a timely motion for a new trial pursuant to CR 59. However, a CR 59 motion for a new trial must be filed and served within 10 days of entry of judgment, and an untimely CR 59 motion does not toll the 30 days for filing a notice of appeal. CR 59(b); *see Schaefco, Inc. v. Columbia River Gorge Comm'n*, 121 Wn.2d 366, 367-68, 849 P.2d 1225 (1993).

CR 59(b) also requires that a filed motion "shall be noted at the time it is filed, to be heard or otherwise considered within 30 days after the entry of the judgment, order, or other decision, unless the court directs otherwise." However, unlike a failure to timely file and serve the motion, failure to timely note a CR 59 motion for hearing will not preclude the tolling of the 30 days for filing a notice of appeal. *See Buckner, Inc. v. Berkey Irrig. Supply*, 89 Wn. App. 906, 916, 951 P.2d 338 (1998) ("[A] timely served and filed motion for reconsideration satisfies the requirements of RAP 5.2(e) and extends the time limit for filing the notice of appeal," and "failure to note the motion at the time it is served and filed does not affect the extension of time for appeal.").

16

In their motion to dismiss, the Egglestons argue the notice of appeal was untimely because the CR 59 motion was not noted for hearing within 30 days of the entry of judgment. Although RAP 5.2(e) requires a CR 59 *motion* to be timely in order to extend the deadline for filing the notice of appeal, this requirement does not necessitate that the motion be noted for hearing within 30 days of the entry of judgment. The requirements of RAP 5.2(e) are met as long as the motion has been filed and served within 10 days. Failing to timely note a motion under CR 59 does not render the motion itself untimely. *See id.*

The Egglestons also argue the County's motion was not substantively a CR 59 motion because it did not substantively comply with CR 59 requirements to request a new trial and raised arguments not permitted under CR 59(j). Although 18 of the 19 arguments in the County's motion were found by the trial court to not be permitted under CR 59(j) and therefore were not properly brought, the trial court determined the motion did raise one proper issue, and the court addressed and rejected that issue on its merits.

We conclude that the 30-day period for filing an appeal was tolled by the County's CR 59 motion, notwithstanding its failure to note it for hearing in accordance with the rule. We therefore proceed to address the merits of both parties' arguments on appeal.

ISSUE 2: JUDICIAL ESTOPPEL/LAW OF THE CASE/LIMITED RETRIAL

The County argues the trial court erred by applying judicial estoppel to prevent it from arguing it was not liable to the Egglestons for inverse condemnation for K&C's property. We agree, but we affirm the trial court's ruling on an alternative basis.

This court reviews a trial court's finding of judicial estoppel for abuse of discretion. *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 864, 281 P.3d 289 (2012). "A trial court abuses its discretion when its decision or order is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons." *Noble v. Safe Harbor Family Pres. Trust*, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009).

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Anfinson*, 174 Wn.2d at 861 (internal quotation marks omitted) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007)). The doctrine has two "primary purposes"—to preserve respect for judicial proceedings and avoid inconsistency, duplicity, and waste of time. *Id.* Our courts consider three factors in determining whether to apply the doctrine:

> (1) whether the party's later position is "clearly inconsistent with its earlier position," (2) whether acceptance of the later inconsistent position "would create the perception that either the first or the second court was misled," and (3) whether the assertion of the inconsistent position would create an

unfair advantage for the asserting party or an unfair detriment to the
opposing party.

*Anfinson*, 174 Wn.2d at 861 (internal quotation marks omitted) (quoting *Arkison*, 160

Wn.2d at 538-39).

Judicial estoppel is "an equitable remedy that the courts may invoke to prevent a

party from benefiting from its own misconduct" and designed to "protect those who have

been misled by that which upon its face was fair or those who have been misled by false

or inconsistent statements." 28 AM. JUR. 2d, *Estoppel and Waiver* § 1 (2025) (footnote

omitted). However, estoppel may generally only be invoked where a party has relied on

another party's previous representation. "[T]he essence of estoppel is that a party who

takes a position that the other party relies and acts upon should not be permitted to take a

contrary position in litigation to the detriment of the other party who acted in good-faith

reliance on the earlier position." 28 AM. JUR. 2d, *Estoppel and Waiver* § 2.

Here, the Egglestons certainly knew what property they owned and what property

K&C owned. They were not misled by the County's erroneous belief of ownership. We

conclude the trial court abused its discretion by judicially estopping the County from

asserting facts the Egglestons knew to be true. Nevertheless, we may affirm a trial

court's ruling on any proper ground if necessary to reach a proper decision. *Alverado v.*

*Wash. Pub. Power Supply Sys.*, 111 Wn.2d 424, 429, 759 P.2d 427 (1988).

No. 39538-3-III
*Eggleston v Asotin County*

*Law of the case*

"The law of the case doctrine provides that once there is an appellate court ruling, its holding must be followed in all the subsequent stages of the same litigation." *State v. Schwab*, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008). The doctrine's purpose is to promote finality and efficiency in the judicial process. *Id.* Application of the doctrine is discretionary. *Id.* It follows that when a broad application of the doctrine hinders one or both of these purposes, an appellate court should exercise its discretion and apply the doctrine narrowly, if at all.

As noted previously, we held, "The trial court's order of a new trial on damages is affirmed." *Eggleston* I, No. 36580-8, slip op. at 15. Our reading of the trial court's otherwise clear order for new trial was based on a couple of sentences in the trial court's December 31, 2018 letter. *See id.* at 8 ("The trial court concluded that a new trial on the issue of liability was not needed, as it was clear the County had liability.").

A broad reading of the late December 2018 letter would preclude the County from contesting any issue of liability. This was how the Egglestons asked the trial court to construe it. One reason for not giving the language a broad reading is the first jury did not necessarily determine that the County was liable for each of the three breach of contract claims. We agree with the County's argument, in its brief on appeal, that the

20

second trial court commented on the evidence when it instructed the jury that each of the Egglestons' three breach of contract claims had been proved in the first trial.

A narrow reading of the December 2018 letter, however, would permit the County to contest most if not all of the components of the Egglestons' claims. This was how the County asked the trial court to construe it. One reason for not giving the language a narrow reading is that to do so would require a third retrial on most if not all of the liability and damages issues, which would frustrate the twin goals of the law of the case doctrine.

The trial court attempted to find a middle ground by focusing on a balanced reading of the trial court's letter, our instructions remanding for a new trial on damages, and by relying on a passage in *Eggleston* I's statement of facts. In applying law of the case to our statement of facts, however, the trial court erred. This is because the law of the case pertains to the law, including an appellate court's holding; it does not pertain to factual statements. *Pac. Coast Shredding, LLC v. Port of Vancouver, USA*, 14 Wn. App. 2d 484, 503, 471 P.3d 934 (2020).

Recognizing the twin goals of promoting finality and efficiency, we exercise our discretion and narrow our holding in *Eggleston* I. In doing so, we resolve the appeal in a manner that does not require a full third trial, while providing the County an appropriate measure of relief, given that the first jury had not actually determined that the Egglestons

21

had proved each of their three breach of contract claims. Rather than treating all issues of

liability as conclusively determined, as we did in *Eggleston* I, we limit the conclusiveness

of the first jury's verdict to the three liability issues expressly discussed in the trial

court's December 31, 2018, letter:

> There was ample basis in the facts for the jury to conclude that [1] the
> Defendants breached the County's contract with the Plaintiffs by not
> building the rockeries as the parties had earlier agreed; [2] that the
> Defendants inversely condemned Plaintiffs' property by rendering useless
> their business driveway; and [3] that Defendants committed a trespass by
> improperly directing water onto the Plaintiffs' land.

CP (36580-8) at 75.

The second conclusively established issue, in the quote above, is that the County

inversely condemned the Egglestons' property by rendering useless their business

driveway. In the first trial, the jury's verdict—by assigning the Egglestons' water

intrusion claim to its water trespass verdict—made clear that its inverse condemnation

verdict related solely to the Egglestons' loss of business driveway access claim. This

conclusively established issue precluded the County, in the second trial, from contesting

its liability to the Egglestons for inverse condemnation, notwithstanding that the interior

property was owned almost entirely by Ms. Eggleston and the Egglestons' children. On

this alternative ground, we affirm the trial court.

*Limited retrial*

A consequence of narrowing our holding in *Eggleston* I is that a third trial will be required, limited to the breach of contract claims. Although the first conclusively established issue is that the County breached its agreement to build rockeries, the trial court did not specify in its letter the breadth of this breach. That issue, together with appropriate damages, must still be determined. The second breach of contract claim that must be retried relates to liability and damages for rerouting the waterline. The third breach of contract claim, regarding the Egglestons' business driveway, must also be retried as it relates to liability and damages because the letter ruling did not specify the breadth of the County's breach—whether the breach occurred during the project, after the project, or throughout the entire time period.

The second jury's verdict related to water trespass ($150,000) and inverse condemnation ($1,000,000) stands.

ISSUE 3: EXCLUSION OF COUNTY WITNESSES

The County argues the trial court abused its discretion in excluding four of its witnesses. Except for Camille Johnson, the trial court excluded these witnesses either due to sanctions for failure to timely disclose them or because their testimonies related to precluded issues. Because a third trial will be required, we address the exclusion issues somewhat summarily:

23

*James Bridges*

James Bridges is a County engineer whose testimony related to liability for the business driveway and the Egglestons' fault for their damages. The background and explanation for the trial court's exclusion of Bridges' testimony is complicated but Bridges was ultimately excluded as a discovery sanction due to the County's failure to timely disclose his testimony. Insofar as Bridges' testimony relates to the breach of contract/business driveway claim, the County's late disclosure no longer will prejudice the Egglestons, and Bridges should be allowed to testify on that issue on remand. Insofar as Bridges' testimony would have related to the inverse condemnation claim, we affirm his exclusion on the basis that the scope of the inverse condemnation claim had been conclusively determined in the first trial.

*Melinda Raber*

Melinda Raber kept a detailed diary of her discussion with the Egglestons and the County concerning the original agreements and how those agreements may have been altered throughout the course of construction. Her testimony related to the Egglestons' business driveway, the rockeries agreement, and the waterline rerouting agreement. The trial court excluded her testimony because it went to questions of liability it believed had been conclusively established by the first trial.

To the extent the trial court excluded her from testifying about the breach of contract claims, we direct the trial court to permit her to testify on these issues on remand.

*Randy Noble*

Randy Noble would have testified as an expert related to the Egglestons' business driveway claim and would have testified why the County's decisions related to the business driveway were either necessary or at least reasonable, and that an alternative route could still be built to provide business access. The full scope of his testimony was not disclosed until well into trial.

Due to the County's untimely disclosure of the scope of Noble's testimony, the trial court excluded him as a discovery sanction and also because his testimony went to liability on the business access issue. We affirm the trial court's exclusion of Noble as a discovery sanction with regard to the inverse condemnation claim on the basis that his testimony was precluded by issues conclusively decided in the first trial. With regard to the breach of contract claim for failure to provide access to the business driveway, to the extent the trial court's decision was based on the untimely disclosure of Noble's testimony, the issue is moot on remand. And because we are ordering a retrial on the entire breach of contract claim, to the extent the trial court's decision was related to the

25

liability aspect of Noble's testimony, we direct the trial court to permit him to testify on those issues.

*Matt Laybourn*

The County learned a couple months before trial that Laybourn, an Idaho resident, would not willingly testify. The County's diligence in attempting to subpoena him to testify was questionable, and the trial court determined that he was not "unavailable" for purposes of ER 804, which would have permitted the County to read his deposition to the jury.

We conclude that the trial court did not abuse its discretion in refusing to permit the County to read Laybourn's deposition to the jury.

*Camille Johnson*

The County sought to read Johnson's deposition into the record, claiming it had no way to subpoena Johnson, a Montana resident, to appear at trial. Johnson's testimony would have laid a foundation for the County's hydrologist expert to testify that the water runoff on the Egglestons' property was no greater than it had been before the construction work. The Egglestons objected to her testimony and argued the County had not disclosed the substance of her testimony until after the discovery deadline. In addition, the Egglestons agreed to waive a foundational objection to the County's hydrologist's

testimony. Because laying a foundation was the sole purpose of her deposition testimony, the trial court denied the County's request. We see no abuse of discretion.

*Lonnie Simpson*

In its opening brief, the County assigned error to the trial court excluding portions of Lonnie Simpson's testimony. However, the County failed to explain which of several trial court rulings related to Simpson's testimony it was assigning error to and also failed to provide any argument or analysis in support of its position. Failure to offer any argument on an assignment of error in an opening brief will be deemed a waiver of the claimed error. *Anfinson*, 174 Wn.2d at 861.

ISSUE 4: EXCLUSION OF OFFERED EXHIBITS

*Construction memorandum*

The County argues the trial court erred in excluding the construction memorandum. It argues the memorandum was relevant to determine the scope of the rockeries agreement, the waterline rerouting agreement, and the business driveway access agreement, and thus bore on the issue of damages. The trial court, under ER 403, excluded the memorandum because it would have required substantial redaction for the jury not to confuse the liability and damages issues.

As we previously noted, the liability issues with respect to the inverse condemnation claim had been conclusively determined by the first jury, but the scope of

the County's breach of contract claims had not been conclusively determined. We

conclude that the trial court's exclusion of the memorandum was not erroneous as to the

inverse condemnation claim, but reverse with respect to the breach of contract claims.

*Map attached to construction memorandum*

The County argues the trial court erred by not admitting the map attached to the

construction memorandum. It argues the trial court twice refused to admit the map

because it determined the map was not relevant. We disagree.

The trial court excluded the map twice, once because it was beyond the scope of

Mr. Egglestons' redirect and later because it was beyond the permissible scope of

Simpson's testimony. The County does not argue these determinations were improper.

Instead, it argues the easement map was relevant. This argument misses the mark

because the trial court never found that the map was not relevant.

ISSUE 5: ADMISSION OF WILLIAM MCCANN'S OPINIONS

The County argues the trial court abused its discretion in allowing William

McCann to offer expert testimony related to the commercial value of the Egglestons'

riverfront property. For the reasons explained below, we disagree.

The Egglestons called McCann to testify about the value of the riverfront property.

McCann had worked as a lawyer for 53 years. He also was the president of McCann

Ranch & Livestock and had worked in commercial land development.

During voir dire, McCann admitted he was neither an appraiser nor a real estate agent. He stated he had worked in the development of commercial properties involving businesses like Shari's, Mattress Firm, and Shopko. He admitted he had no experience in working with properties in Washington zoned residential/agricultural, but had some experience with commercial use properties, yet was not familiar with the zoning rules and regulations in Washington.

However, McCann testified that working in land development required him to be aware of the fair market value of his own property so that he knew what to charge for rent. Thus, he said he did not "feel uncomfortable giving values of ground that are in our, quote, community" and was aware of the commercial value of land in Lewiston and Clarkston. 2 RP (Oct. 13, 2022) at 1123. Although all his experience in developing property was in Idaho, McCann explained that because his property development was in competition with Clarkston, he was aware of property values in Clarkston as well.

The County objected to McCann's testimony, arguing he was not qualified to testify as to Washington property zoned residential/agriculture as his expertise was in commercial development solely in Idaho. It maintained the Egglestons' property was not zoned commercial. At best, there was a legal nonconforming use of the property.

The Egglestons responded that there were three separate businesses (including Aardvark's, the boat rental business) that were legal uses before the zoning change, and

so those uses now were legal nonconforming uses. They further argued that McCann's

years of working with properties provided him with the experience and training to allow

him to understand appraisals and property values in Lewiston and Clarkston.

The trial court determined McCann had sufficient experience to qualify as an

expert and therefore his testimony was admissible under ER 702. The trial court noted

the issues raised by the County with McCann's experience could be developed during its

cross-examination.

The admissibility of expert testimony is largely within a trial court's discretion. *In

re Marriage of Katare*, 175 Wn.2d 23, 38, 283 P.3d 546 (2012). Accordingly, decisions

related thereto will not be disturbed absent a very clear abuse thereof. *Id.*

Expert testimony is admissible provided it meets certain requirements:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue, a
> witness qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or otherwise.

ER 702. "An expert may not testify about information outside his area of expertise."

*Katare*, 175 Wn.2d at 38. However, ER 702 does not require an individual to have

certain licenses to qualify as an expert. *Johnston-Forbes v. Matsunaga*, 177 Wn. App.

402, 411, 311 P.3d 1260 (2013), *aff'd*, 181 Wn.2d 346, 333 P.3d 388 (2014).

The County argues the trial court abused its discretion in admitting McCann's testimony because he was not qualified to testify as an expert with regard to the value of residential property in Washington. The County asserts that the fact that McCann had experience with commercial property in Idaho did not mean he was qualified to give an expert opinion on the value of the Egglestons' residential property located in Washington.

While the County asserts McCann only practiced in Idaho and worked with commercial property solely in Idaho, he testified he was familiar with commercial property values in both Washington and Idaho. The fact he did not have a real estate license or any appraiser training did not preclude him from providing expert testimony because formal education is not required for an individual to be qualified as an expert; experience alone is sufficient, and McCann had the requisite experience. *Katare*, 175 Wn.2d at 38.

The County broadly asserts McCann's testimony was inadmissible because the Egglestons' property was zoned rural residential and no commercial use was permitted. Thus, evidence related to the *commercial* value of the beachfront property was not pertinent to the Egglestons' damages claim and only prejudiced the County because the purported commercial value of the property was higher than its residential value.

While the property in question was zoned rural residential, the Egglestons had operated a single commercial entity on the property prior to the zoning ordinance going into effect and therefore the prior use was grandfathered. As a result, although evidence of the commercial value of the property was not as directly relevant as it would have been had the property been zoned for commercial use, it also was not irrelevant. The trial court informed the County that McCann's absence of certain experience could be emphasized through cross-examination. We conclude that the trial court did not abuse its broad discretion in allowing McCann's testimony.

ISSUE 6: ATTORNEY FEE SANCTIONS AGAINST THE COUNTY

The County argues the trial court abused its discretion in awarding attorney fees under CR 37, erred in failing to articulate the basis for entering CR 37 sanctions, failed to explain how it came to the dollar amount it awarded, and abused its discretion in applying lodestar adjustments to the sanctions. For the reasons explained below, we remand for the trial court to better justify, reduce, or reconsider attorney fee sanctions.

A. Factual Background[3]

Several times during trial, the Egglestons accused opposing counsel of contemptuous behavior and asked the trial court to find him in contempt. During trial, the court did not rule on these requests.

After trial concluded, the Egglestons noted their previous requests for a hearing. They argued opposing counsel's contemptuous conduct started with attempts to reargue the issue of liability during the opening statement and continued throughout trial despite continued reprimands from the trial court. In response, opposing counsel said he had endeavored to comply with the trial court's orders and there was no basis for finding him in contempt.

After hearing argument, the trial court noted there were times during trial when it was concerned with defense counsel's conduct. However, it stated it believed many of the issues that arose resulted from the difficulty in walking the line between liability and damages. Thus, the court denied the motion for contempt.[4]

---

[3] Although the County challenges only the sanctions award, we view it necessary, as did the parties, to discuss the broader attorney fee award.

[4] The Egglestons assigned error to the trial court's denial of their motion for contempt in their opening brief. However, they failed to offer any argument in support of this assignment of error in their opening briefing. Instead, they asserted the trial court did not abuse its discretion in its award of attorney fees sanctions under CR 37. We decline to address the Egglestons' unsupported assignment of error. *See State v. Stubbs*, 144 Wn. App. 644, 652, 184 P.3d 660 (2008), *rev'd on other grounds*, 170 Wn.2d 117, 240 P.3d

The Egglestons subsequently asked the trial court to award their entire attorney fees, including those incurred in the first trial. They argued they were entitled to a fee award because of their successful inverse condemnation claim. They further argued, to the extent their other claims did not permit a fee award, the court should award those fees as CR 37 sanctions.

The Egglestons' three attorneys—Todd Richardson, Brandon Casey, and Michael Bodey—submitted time sheets in support of their fee request. Richardson and Bodey both submitted detailed itemizations of their time. However, Casey's time sheets were only two pages and lacked detail even though he had billed almost 500 hours. The Egglestons requested a lodestar adjustment of 1.75 for Richardson's fees and 1.25 for Casey's fees because they had agreed to be paid a contingency only if the Egglestons prevailed. We summarize their request in the following chart:

| Attorney | Requested Fee Without Lodestar Adjustment | Requested Fee with Lodestar Adjustment |
|---|---|---|
| Todd Richardson | $296,623.85 | $519,091.74 (1.75) |
| Brandon Casey | $185,156.25 | $231,445.31 (1.25) |

143 (2010). To the extent the Egglestons attempt to argue their assigned error in their reply brief, the argument comes too late and will not be considered. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

| Michael Bodey | $98,175.00 | Not requested |
|---|---|---|
| **Totals** | $579,955.10 | $848,712.05 |

CP at 4281-89. This request includes fees for the Egglestons' inverse condemnation claim as well as CR 37 sanctions.

The trial court held a hearing on the Egglestons' motion for attorney fees. During the hearing, it became apparent that the requested amounts did not include the time billed by Richardson in the first trial. The trial court instructed the Egglestons to submit a table breaking down all attorney fees requested, including those incurred during the first trial. At the conclusion of the hearing, the trial court also instructed Richardson to attempt to narrow his billing to the items he believed were related to the inverse condemnation claim. The court additionally asked Casey to file an unredacted version of his billable hours because Casey said he had redacted certain items unrelated to the inverse condemnation claim.

Following the hearing, counsel for the Egglestons submitted a supplemental declaration for fees as follows:

| Attorney | Requested Fee Without Lodestar Adjustment | Requested Fee with Lodestar Adjustment |
|---|---|---|
| Todd Richardson | $366,913.85 | $642,099.23 (1.75) |

| Brandon Casey | $192,656.25 | $240,820.31 (1.25) |
|---|---|---|
| Michael Bodey | $122,718.75 | $98,175 (0.8)[5] |
| **Totals** | $682,288.85 | $981,094.54 |

CP at 4876-77.

Following the filing of the supplemental declaration, the trial court issued its decision. The court found that the Egglestons were entitled to attorney fees on their inverse condemnation claim. It further found there was a common core of facts and related legal theories and the Egglestons were successful on all claims. Accordingly, it determined it was appropriate to award all attorney fees except where the time spent was shown to be "distinctly separate from the inverse condemnation claim." CP at 4891-92. The trial court accordingly claimed to have reduced the billed amounts from the Egglestons' attorneys that were not a part of the inverse condemnation claim as follows:

| Attorney | Total Billing | Reduced Billing[1] |
|---|---|---|
| Todd Richardson | $366,913.85 | $204,204.00 |
| Brandon Casey | $192,656.25 | $185,156.25 |
| Michael Bodey | $122,718.75 | $122,718.75 |
| **Total Fee** | **$682,288.85** | **$512,079.00** |

---

[5] Although the Egglestons did not request a lodestar adjustment for Bodey's fees in their initial motion, they requested a lodestar adjustment to his fees in the supplemental declaration.

CP at 4892 (footnote omitted). The court then awarded the Egglestons the fees contained

in the reduced billing column.

The court also awarded the Egglestons additional fees in the form of CR 37

sanctions:

> Furthermore, the Court finds that an award of additional attorneys' fees is warranted based upon multiple CR 37 violations and the Defendant's vexatious conduct during litigation. While the Court denied the Plaintiffs' repeated motions for contempt, there is no doubt that Defendant's conduct regarding discovery (including late disclosures in violation of the scheduling order) caused the Plaintiffs to incur attorneys' fees and costs that would not have otherwise been necessary. Likewise, while the Court had ruled that liability had been established in the 2018 trial, Defendant crossed the line between mitigation of damages and denying liability multiple times, requiring the Court to give corrective instructions to the jury and many sidebars that protracted the length of the trial.

CP at 4892. Accordingly, the court found it was proper to award the Egglestons "the

difference between the total billing and the reduced billing," awarding the amount in the

"Total Billing" column above for each attorney. CP at 4893. In a footnote, the court

added:

> The Defendant makes multiple arguments that certain fees and costs should be excluded for a variety of different reasons. To the extent that the Defendant may be correct, the Court is expressly ordering those amounts as sanctions for the reasons stated above.

CP at 4893 n.2. Again, the trial court's decision did not explain how it arrived at this

amount for the attorney fee award.

The trial court then determined lodestar multipliers were appropriate for each of the lawyers, adjusting Richardson's fees by 1.25, Casey's fees by 1.15, and Bodey's fees by 0.80. Accordingly, the court ordered the County to pay the following fees: $458,642.31 for Richardson, $221,554.69 for Casey, and $98,175.00 for Bodey for a total fee award of $778,372.00.

### B. Legal Principles

CR 37(b)(2) allows a trial court to impose sanctions on a party that "fails to obey an order to provide or permit discovery" *or* "if a party fails to obey an order entered under [CR] 26(f)." CR 26(f) discusses a trial court's authority to order the parties to attend a discovery conference. In addition to or instead of the listed sanctions permitted by CR 37, a court shall require a party or counsel "to pay the reasonable expenses, including attorney fees, caused by the failure [to comply with discovery orders], unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." CR 37(b)(2).

This court reviews a trial court's decision to impose discovery sanctions pursuant to CR 37 for an abuse of discretion. *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 582, 220 P.3d 191 (2009). "'A trial court exercises broad discretion in imposing discovery sanctions . . . and its determination will not be disturbed absent a clear abuse of

38

discretion.'" *Id.* (quoting *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006)). This court reviews questions of law de novo. *Mayer*, 156 Wn.2d at 684.

A trial court's reasons supporting its imposition of discovery sanctions should "be clearly stated on the record so that meaningful review can be had on appeal." *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). In other words, a trial court must support its award of attorney fees with findings of fact and conclusions of law. *Just Dirt, Inc. v. Knight Excavating, Inc.*, 138 Wn. App. 409, 415, 157 P.3d 431 (2007). The record must also include an explanation of how the court calculated the attorney fee award. *Id.* at 416. "'[A]bsence of an adequate record upon which to review a fee award will result in a remand of the award to the trial court to develop such a record.'" *Id.* at 415-16 (remanding trial court's award of attorney fees as sanctions where trial court failed to enter findings identifying sanctionable actions and did not explain how it calculated the fee award) (quoting *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998)).

C.  APPLICATION

1.  *Award of fees*

The County argues the trial court lacked authority to impose sanctions based on CR 37. It asserts the trial court was not permitted to impose sanctions in the form of attorney fees against it because CR 37 does not permit an award of such a sanction for

previously undisciplined conduct.  Instead, it claims monetary sanctions may only be imposed pursuant to CR 37 if a party has violated a CR 26(f) order and the court determines a lesser sanction would not suffice.

Although the County is correct that a trial court may impose CR 37 sanctions where a party has violated a CR 26(f) order, such sanctions are also permitted if the court finds a party has failed "to obey an order to provide or permit discovery."  CR 37(b)(2). And the County's failure to provide discovery was the basis for the trial court's CR 37 sanctions here, as the court found the County's late disclosures, along with other conduct, violated the discovery orders.  Thus, the County's argument that the trial court lacked authority to impose sanctions because there was no violation of a CR 26(f) order fails because such a violation was not required.

The County also argues the trial court was required to consider lesser sanctions before ordering it to pay attorney fees.  This argument contradicts the plain language of CR 37.  As stated above, CR 37(b)(2) states that trial courts *shall* order a violating party to pay attorney fees "[i]n lieu of any of the foregoing orders [list of sanctions] or in addition thereto."  CR 37(b)(2).  The rule does not require a court to consider lesser sanctions prior to ordering payment of attorney fees and, in fact, obligates a court to award attorney fees where a violation is found.

Although the County does not argue this in its brief, another purported basis for the trial court's imposition of CR 37 sanctions was the County's repeated ventures into the realm of liability during trial. In entering the order, the trial court found the County, on multiple occasions, crossed the line between liability and mitigation of damages. Although the County's conduct in arguing liability violated the trial court's orders, it does not appear that these actions in any way pertained to discovery. Therefore, it appears the trial court lacked authority to sanction the County for this conduct under CR 37.

The County further argues the trial court erred in failing to limit the attorney fees award to amounts reasonably expended as a result of the County's sanctionable conduct. It alleges that instead of considering the fees incurred by the Egglestons as a result of the County's discovery violations, the trial court simply ordered the County to pay the amount of fees it had determined were incurred on noncompensable claims. Moreover, it maintains the trial court's attorney fee award already compensated the Egglestons for the time spent opposing sanctionable conduct. We agree with all of these arguments.

Although the trial court did add in a footnote that, to the extent certain fees needed to be excluded for "a variety of different reasons," it was ordering those amounts be awarded as sanctions "for the reasons stated above," this vague statement failed to articulate either a legal or factual basis for the additional sanctions. CP at 4893 n.2. Moreover, the trial court failed to provide any indication as to the amount of attorney fees

it was awarding as CR 37 sanctions versus the amount it was awarding for the unknown other reasons. Without any reasoning or findings from the trial court to support the sanctions and without knowing what portions of the award was for CR 37 sanctions versus "other" sanctions, it is impossible for this court to properly review the decision. [6] We therefore remand for the trial court to better justify, reduce, or reconsider its attorney fee sanctions.[7]

### 2. Lodestar adjustment

Additionally, the County argues the trial court abused its discretion in applying a lodestar adjustment to the amounts imposed as CR 37 sanctions. Because this issue may arise on remand, we exercise our discretion and address it now.

The County argues that a lodestar adjustment should not be applied to a sanctions award because sanctions should be limited to the additional fees caused by the sanctionable conduct. We agree.

---

[6] Although the trial court could have potentially held the County in contempt for such conduct, as recounted above, the trial court actually denied the Egglestons' motion for contempt against the County, finding the allegedly contemptuous behavior was not intentional and was rather a byproduct of the unavoidable confusion created in holding a trial solely on damages.

[7] The Egglestons also argue they were statutorily entitled to an award of attorney fees for their trespass claim. However, this does not cure the infirmities in the trial court's CR 37 award.

CR 37(b)(2) provides in relevant part:

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order . . . to pay the reasonable expenses, including attorney fees, *caused by the failure* [to obey the order], unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The language of the rule expressly ties attorney fee sanctions to those fees "caused by the failure" of the sanctioned party to obey the order. To the extent the Egglestons did not pay their attorneys by the hour, it could be argued that the County's sanctionable conduct did not cause the Egglestons to incur additional fees. Embracing such a construction would reward a wrongdoer at the expense of an attorney forced to work additional hours without commensurate compensation. The County, properly, does not argue for this construction.

Nevertheless, the contingent nature of recovery that justifies a multiplier to an award of fees in favor of an attorney accepting contingent compensation does not apply to sanctions. This is because an award of sanctions is not contingent on plaintiffs recovering damages. We conclude, if the trial court awards attorney fees as sanctions after remand, it should not increase those sanctions by a multiplier.

ISSUE 7: EXCLUSION OF THE EGGLESTONS' COST OF COMPLETION DAMAGES

The Egglestons argue the trial court abused its discretion by excluding their evidence of what it would cost to complete the rockeries. Because this issue will likely

present itself in the third trial, we address it here. *See State ex rel. Haskell v. Spokane County Dist. Ct.*, 198 Wn.2d 1, 16, 491 P.3d 119 (2021) (judicial economy favors addressing issues likely to occur after remand).

Before the second trial, the parties disagreed as to whether the Egglestons should be permitted to present evidence of what it would cost to build rockeries on all of the new slopes. The evidence the Egglestons sought to present would have permitted them to recover $3 million for their rockeries agreement claim, even though their evidence was that the rockeries would only add $150,000 to their property's value.

Ultimately, the trial court provided two independent bases for not allowing the Egglestons to present such evidence. First, it believed that the method the Egglestons chose in the first trial for calculating such damages amounted to an election of remedies. Second, it believed that the cost to complete was clearly disproportionate to the value the rockeries would add, and was thus a remedy disallowed by *Eastlake Construction Co. v. Hess*.[8] We believe that the trial court's second basis is sound and limit our discussion accordingly.

"In measuring damages in contract construction cases, courts in Washington follow *Restatement (Second) of Contracts*, § 348 (Am. Law Inst. 1981), which recognizes the injured party is entitled to 'the reasonable cost of completing performance or of

---

[8] 102 Wn.2d 30, 686 P.2d 465 (1984).

remedying the defects if that cost is not clearly disproportionate to the probable loss in value.'" *Wood v. Milionis Constr., Inc.*, 198 Wn.2d 105, 126, 492 P.3d 813 (2021) (internal quotations marks omitted) (quoting *Eastlake Constr. Co.*, 102 Wn.2d at 47.

Here, the cost to complete the  rockeries was clearly disproportionate to the probable loss in value.  We conclude that the trial court properly precluded the Egglestons from arguing a theory of damages they were not permitted to recover.

ISSUE 8:  AWARD OF ATTORNEY FEES ON APPEAL

Citing RCW 8.25.070, the Egglestons request an award of reasonable attorney fees on appeal.  Quoting *City of Snohomish v. Joslin*, 9 Wn. App. 495, 500, 513 P.2d 293 (1973), they argue the statute manifests a legislative intent to provide full recovery, including attorney fees, to those harmed by a government taking regardless of whether the taking occurs within or outside of a formal condemnation proceeding.  The County offers no opposition to this argument.

Accordingly, we grant the Egglestons' request.  But, because only one of their many claims permits recovery of attorney fees and because that claim was contested on appeal only in two respects—the judicial estoppel issue and the admissibility of their damages expert—we limit the fee award to 25 percent of their reasonable hours spent on appeal, multiplied by their reasonable hourly rates.  *See Clausen v. Icicle Seafoods, Inc.*, 174 Wn.2d 70, 82, 272 P.3d 827 (2012) (when fewer than all claims permit recovery of

attorney fees and where the specifics of the case make it difficult to segregate time, a court may base its attorney fee award on a rough percentage of what time was spent on claims permitting recovery of fees).

Affirmed in part, reversed in part, and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____
Staab, J.

_____
Cooney, J.

46